IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PETER BONEWITZ, ) | |
| ) | |
| PLAINTIFF, ) | No. 3:14-cv-02281 |
| ) | Judge Trauger/Bryant |
| v. ) | |
| ) | |
| CIGNA CORPORATION, *et. al.*, ) | |
| ) | |
| DEFENDANTS. ) | |

To: The Honorable Judge Aleta A. Trauger, United States District Judge

## REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge **RECOMMENDS** that Defendants' Motion to Dismiss (Docket Entry 35) be **GRANTED**.

### I. Statement of the Case

Plaintiff's Complaint was originally filed in the Circuit Court for Davidson County, Tennessee on October 14, 2014. (Docket Entry 1-1). Defendants Cigna Corporation (Cigna), Connecticut General Life Insurance Company (Connecticut General), and Zotec Partners, LLC (Zotec) removed the action to this Court on November 20, 2014. (Docket Entry 1). The case was later referred to the Magistrate Judge. (Docket Entry 5 and 13).

On January 5, 2015, Defendant Zotec filed an Answer, and Defendants Cigna and Connecticut General filed a joint Motion to Dismiss. (Docket Entry 33 and 35). Plaintiff did not respond to the Motion to Dismiss.[1] Subsequently, Plaintiff filed a Motion to Extend Deadlines and a Motion to Amend the Complaint. (Docket Entry 54 and 64). The Magistrate Judge denied

---

[1] According to Local Rule 7.01(b), a response in opposition to a motion must be filed and served within fourteen days of service of the motion, and a "[f]ailure to file a timely response shall indicate that there is no opposition to the motion."

both motions. (Docket Entry 67 and 68). Pending before the Court is Defendants' Motion to Dismiss. (Docket Entry 35).

## II. Standard of Review

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss based on lack of standing is appropriately brought under Fed. R. Civ. P. 12(b)(1) because standing is a jurisdictional matter, "and a plaintiff's lack of standing . . . deprive[s] a court of jurisdiction." *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) (citations omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

When analyzing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's factual allegations as true. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). "Bare assertions of legal conclusions" are not enough to avoid dismissal. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (citation omitted). To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts alleged by the plaintiff must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When presented with a *pro se* complaint, the court should liberally construe it and hold it "to less stringent standards than the formal pleadings prepared by attorneys." *Bridge*, 681 F.3d at 358.

The court may properly consider "exhibits attached to [the] defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,

without converting the motion [to dismiss] to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (citation omitted).[2]

### III. Summary of Allegations

Plaintiff alleges that "Cigna, by colluding with Zotec . . . , has been able to manipulate the coding on tens of millions of records" in a scheme to "artificially influence member premiums through incentives, strategic claims acceptance, and exploiting weaknesses in the ICD-9[3] coding tool." (Docket Entry 1-1, p. 5-6, 10, 21). More specifically, Plaintiff alleges that Cigna is making health care premiums rise artificially by "[s]trategically accepting claims for Male Hypogonadism or 'Low-T' [testosterone treatments] based on known unstable testing and interpretation methods, and using a faulty and inadequate coding system." (Docket Entry 1-1, p. 25).

In 2011, Plaintiff worked for Zotec as a business intelligence analyst and data warehouse developer. (Docket Entry 1-1, p. 33). He believes that Zotec's business model is "based on a scheme to commit fraud." (Docket Entry 1-1, p. 33). In support of this allegation, Plaintiff states that while he was employed by Zotec, the company used improper coding practices, did not require phone representatives to take notes when discussing billing disputes, did not log or track billing disputes, concealed diagnosis codes in bills, used an automated phone system to discourage complaints, and used psychological tactics and hiring methods to prevent employees

---

[2] Defendants filed several exhibits in support of their Motion to Dismiss. (Docket Entry 37, 37-1, 37-2, 37-3, 37-4). These exhibits contain pertinent information about the welfare benefit plan (Plan) referred to by Plaintiff in his Complaint. They are considered in determining Plaintiff's Plan-related claims.

[3] "ICD" stands for "International Classification of Diseases." (Docket Entry 1-1, p. 11). It is a "health care classification system, providing a system of diagnostic codes for classifying diseases." (Docket Entry 1-1, p. 11). Plaintiff alleges that Defendants' use of ICD-9 instead of the current version, ICD-10, results in less-specific diagnostic codes. (Docket Entry 1-1, p. 11).

from discovering fraud. (Docket Entry 1-1, p. 33-38). After Plaintiff confronted his manager about these concerns, Plaintiff's employment was terminated. (Docket Entry 1-1, p. 39).

Thereafter, Plaintiff worked for NewQuest, LLC (NewQuest)[4] and participated in its welfare benefit plan (Plan) from March or April 2012 to October 2012. (Docket Entry 1-1, p. 26 and 31; 36, p. 3 and 16). Although "NewQuest did not sponsor its own medical plan, NewQuest participated in the HealthSpring, Inc. Group Welfare Plan, an employee welfare benefit plan under ERISA." (Docket Entry 36, p. 3; 37-1, p. 7). Connecticut General was a third-party administrator for the Plan. (Docket Entry 36, p. 4; 37-2, p. 6; 37-3).

Through the Plan, Plaintiff received testosterone treatments. (Docket Entry 1-1, p. 27). He did not have an "issue getting treatment or having the claim submitted for insurance coverage through CIGNA." (Docket Entry 1-1, p. 27). Plaintiff became concerned that Cigna covered the treatments as "medically necessary" even though the clinics Plaintiff had visited had not followed the appropriate protocols.[5] (Docket Entry 1-1, p. 27). Plaintiff "believed, based on this experience and his previous experiences and knowledge, that CIGNA was accepting and paying the claims [for low testosterone treatment] not out of medical necessity or generosity, but in order to artificially increase risk and raise premiums for everyone." (Docket Entry 1-1, p. 28). Plaintiff alleges that he brought his concerns to Cigna, was terminated as a result, and filed a wrongful termination complaint. (Docket Entry 1-1, p. 28-31). The termination suit was later dismissed by this Court in *Bonewitz v. NewQuest, LLC*, No. 3:14-CV-00096, 2015 WL 1825375 (M.D. Tenn. Apr. 22, 2015).

---

[4] NewQuest, LLC, is a wholly-owned subsidiary of HealthSpring, Inc. (HealthSpring). (Docket Entry 36, p. 3). In January 2012, Cigna acquired HealthSpring and its subsidiaries. (Docket Entry 36, p. 3). Throughout the Complaint, primarily Plaintiff refers to his employer as Cigna.

[5] The alleged protocol violations include: "not taking multiple blood tests in order to determine an 'accurate' average of testosterone levels; not telling patient to hold off until sinus infection was gone; and not having the patient take the lab test in the morning when T-levels are higher." (Docket Entry 1-1, p. 27-28).

Plaintiff sets forth the following causes of action: (1) consumer fraud; (2) wire fraud pursuant to 29 U.S.C. § 1105; (3) fraud in the inducement; (4) negligence; (5) breach of fiduciary duty; (6) breach of fiduciary duty to an ERISA plan; (7) breach of contract; and (8) breach of promises. (Docket Entry 1-1, p. 42-61).

## IV. Analysis

### A. Wire Fraud

As an initial matter, Plaintiff cannot maintain a claim for wire fraud. (Docket Entry 1-1, p. 47). Liberally construing the claim, the Magistrate Judge finds that Plaintiff attempts to state a claim under 18 U.S.C. §§ 1341 and 1343, which are federal mail and wire fraud statutes.[6] "Violations of [18 U.S.C. §§ 1341 and 1343], however, do not give rise to private causes of action." *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) (citation omitted). For this reason, Plaintiff's claim of wire fraud should be dismissed.[7]

### B. Breach of Fiduciary Duty to an ERISA Plan

Liberally construing Plaintiff's Complaint, the Magistrate Judge finds that Plaintiff's claim for "Breach of Fiduciary Duty to an ERISA Plan" is brought under 29 U.S.C. § 1132(a)(3), which provides that:

> [A] participant, beneficiary, or fiduciary [may bring a civil action] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

---

[6] Plaintiff wrote "29 U.S.C. § 1105" under his claim of wire fraud. (Docket Entry 1-1, p. 47). However, this is an ERISA provision regarding liability for breach of a co-fiduciary and is possibly mistyped.

[7] Alternatively, this claim may be preempted by ERISA § 514(a), 29 U.S.C. § 1144(a).

29 U.S.C. § 1132(a)(3).[8] Again, liberally construing the Complaint, the Magistrate Judge finds that Plaintiff alleges violations under 29 U.S.C. §§ 1104 and 1105 for breach of fiduciary or co-fiduciary duties. Plaintiff alleges that Defendant Cigna "owed a fiduciary duty to Plaintiff to maintain transparency of its actions including contractual agreements and to diligently find fraud even if it meant premiums would go down." (Docket Entry 1-1, p. 57). Plaintiff argues that Cigna breached its fiduciary duty by failing to: (1) "ensur[e] that the medical billing industry is using coding processes following best practices and ensuring that members are able to effectively dispute claims"; (2) "upgrade its provider network to ICD-10"; (3) "disclose contract incentives that may exist"; (4) "handle internal fraud investigations"; (5) "properly address or respond to concerns of fraud brought by an employee"; and (6) "track medical billing companies in order to make fraud detection more efficient." (Docket Entry 1-1, p. 57).

Plaintiff also argues that he suffered economic injury, including "the amount of the difference between the price [Plaintiff] paid for Cigna's insurance premiums . . . and the diminished value reflecting premiums that were established as a result of unethical and unscrupulous practices." (Docket Entry 1-1, p. 57-58). Plaintiff seeks injunctive relief, restitution, punitive damages, costs, and attorneys' fees. (Docket Entry 1-1, p. 58).

1. **Relief Available Under 29 U.S.C. § 1132(a)(3)**

It is well settled that the relief available under 29 U.S.C. § 1132(a)(3) is limited to remedies "traditionally viewed as 'equitable,' such as injunction or restitution." *Allinder v. Inter-*

---

[8] Plaintiff may not pursue a claim under 29 U.S.C. § 1132(a)(1)(B) because he is not claiming he was denied benefits under the Plan. Additionally, Plaintiff is seeking personal relief, not relief to the Plan, so he may not maintain a suit under 29 U.S.C. § 1132(a)(2). Even if this suit was brought under § 1132(a), it would fail the Article III standing requirement of an "injury in fact" because the harms alleged by Plaintiff are purely speculative. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007) (finding that the plaintiff's claims that his contributions to the health care plan were higher because of the defendants' fraudulent billing practices were too speculative to establish Article III standing for a claim under § 1132(a)(2)). The only avenue available to Plaintiff is under the ERISA "catch-all" provision, 29 U.S.C. § 1132(a)(3).

*City Products Corp. (USA)*, 152 F.3d 544, 552 (6th Cir. 1998) (quoting *Mertens v. Hewitt Associates,* 508 U.S. 248, 255 (1993)) (internal quotation removed); *see also Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 609 (6th Cir. 2007). Legal restitution; i.e., monetary damages, is not available under § 1132(a)(3). *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 960 (6th Cir. 2014). Equitable restitution may be available under this section if the plaintiff seeks to recover "***particular funds*** or property in the defendant's possession," instead of generally seeking "to impose personal liability on the defendant." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002); *see also Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006). Courts have emphasized that the plaintiff must identify the particular fund from which he seeks to recover; otherwise, the plaintiff is seeking legal restitution. *Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 756 F.3d at 960.

To the extent that Plaintiff seeks monetary and punitive damages, these forms of legal relief are unavailable under § 1132(a)(3). Additionally, Plaintiff's request that Cigna "make full restitution of all funds wrongfully obtained, held or charged" is unavailable under § 1132(a)(3), for Plaintiff does not specify from which fund he seeks to recover. Even assuming that Plaintiff intends to recover from the Plan account, the account funds are not in Cigna's possession. The Plan is sponsored by HealthSpring and administered by Connecticut General; Cigna does not control the Plan account. (Docket Entry 37-1; 37-2, p. 6; 37-3; 37-4). Plaintiff's claim for injunctive relief remains.

    **2. Constitutional Standing**

To pursue an ERISA claim in federal court, the plaintiff must have constitutional standing (Article III standing) and statutory standing. *Loren*, 505 F.3d at 606. A plaintiff's failure

to establish constitutional standing requires dismissal for lack of subject matter jurisdiction. *Id*. at 607. Constitutional standing is satisfied by showing that the plaintiff "(1) . . . suffered an ***'injury in fact'*** . . . ; (2) the injury is fairly ***traceable*** to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be ***redressed*** by a favorable decision." *Id*. (citation omitted) (emphasis added). A plaintiff suing for injunctive relief under 29 U.S.C. § 1132(a)(3) may establish Article III standing without showing individualized harm. *Id*. at 609-10. The plaintiff need only allege a "violation of the fiduciary duty owed to [him]." *Id*. at 610.

Plaintiff fails to establish constitutional standing. Even assuming that the Complaint establishes an injury in fact by alleging a breach of fiduciary duty, Plaintiff fails to show that the breach is fairly traceable to Cigna's actions or that the injunctive relief sought would redress the alleged breach because Cigna is not a Plan fiduciary.

To maintain a claim for breach of fiduciary duty under ERISA, the plaintiff has the burden of proving "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach caused harm to the plaintiff." *Thorn v. Northside Hosp.*, No. 1:07-CV-155, 2008 WL 2600791, at *3 (W.D. Mich. June 24, 2008) (citing *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005)). For purposes of ERISA, "fiduciary" is given a functional definition. *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999). A person is a plan fiduciary if "he exercises ***any discretionary authority or discretionary control***" over plan management, plan administration, plan investment advice, or disposition of plan assets. 29 U.S.C. § 1002(21)(A) (emphasis added).

Plaintiff's claim against Cigna must fail because Plaintiff does not plead facts to support a finding that Cigna was a Plan fiduciary. Plaintiff's conclusory assertion that Cigna owed him a

fiduciary duty is insufficient. (Docket Entry 1-1, p. 57). The Plan was sponsored by HealthSpring and was administered by Connecticut General. (Docket Entry 37-1; 37-2, p. 6; 37-3; 37-4). The Plan gave the Plan administrator "***complete discretionary authority to control the operation and administration of [the] Plan***." (Docket Entry 37-1, p. 13) (emphasis added). Cigna was not a party to the Plan administration agreement between HealthSpring and Connecticut General. (Docket Entry 37-3 and 37-4). The fact that Cigna acquired HealthSpring in 2012 does not make Cigna liable for its subsidiary's management of the Plan. *See Moeckel v. Caremark RX Inc.*, 385 F. Supp. 2d 668, 674 (M.D. Tenn. 2005) (dismissing ERISA-based fiduciary claims against a parent company because the company's wholly-owned subsidiary was the actual party to the plan); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("[A] parent corporation . . . is not liable for the acts of its subsidiaries.") (citation omitted).

Ultimately, Plaintiff does not plead facts to show, and the Magistrate Judge cannot infer, that Cigna had any discretionary authority or control over the Plan. Any action or inaction on Cigna's part could not, therefore, be a breach of a fiduciary duty owed to Plaintiff. Furthermore, the injunctive relief Plaintiff seeks would not redress the injury alleged because Cigna does not have control or authority over the Plan. Plaintiff does not discuss the role of Connecticut General or HealthSpring in this cause of action, and the Magistrate Judge cannot infer that Plaintiff meant to implicate another party instead of Cigna. For all of these reasons, the Magistrate Judge finds that Plaintiff lacks Article III standing to raise this claim.

### 3. Statutory Standing

Only a "participant, beneficiary, or fiduciary" may bring a civil suit under 29 U.S.C. § 1132(a)(3).[9] ERISA defines a participant as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). This definition was further explained by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989). The Tenth Circuit has helpfully condensed the *Firestone* "participant" definition into four categories:

> (1) an employee currently in covered employment;
>
> (2) an employee reasonably expected to be in covered employment;
>
> (3) a former employee with a reasonable expectation of returning to covered employment; or
>
> (4) a former employee with a colorable claim to vested benefits, which is to say a former employee with a colorable claim that (a) he will prevail in a suit for benefits, or (b) his eligibility requirements will be fulfilled in the future.

*Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1226 (10th Cir. 2011). Although the Sixth Circuit typically applies a "zone of interests" test to analyze statutory standing under ERISA, the Sixth Circuit applies the *Firestone* factors to suits brought by former employees. *Bridges v. Am. Elec. Power Co.*, 498 F.3d 442, 444 n.1 (6th Cir. 2007).

The Magistrate Judge finds that Plaintiff is not a "participant" as defined by ERISA. Plaintiff is not currently, and is not reasonably expected to be, in covered employment. Plaintiff's employment with NewQuest and participation in the Plan ended in October 2012. (Docket Entry 1-1, p. 26, 31; 36, p. 3). This lawsuit was filed two years later, in October 2014.

---

[9] Similarly, only a participant, beneficiary, fiduciary, or the Secretary of Labor may bring a civil suit under 29 U.S.C. § 1132(a)(2). Plaintiff lacks statutory standing to raise a § 1132(a)(2) claim for the same reason he lacks statutory standing to raise a § 1132(a)(3) claim.

(Docket Entry 1-1). Further, it does not appear that Plaintiff reasonably expects to return to covered employment. Last, Plaintiff does not seek benefits under the Plan. Quite to the contrary, Plaintiff claims that Defendants erred by *granting* him benefits under the Plan. He seeks to recoup the difference between the services he paid for and the services he received. Even if he did seek additional benefits, however, Plaintiff fails to state a colorable claim that he would prevail in a suit against Cigna since Cigna is not a party to the Plan and has no role in administering the Plan. Additionally, it does not appear that eligibility requirements for the Plan will be fulfilled in the future. Plaintiff is not a Plan "participant" and therefore lacks statutory standing to maintain a claim under 29 U.S.C. § 1132.

### C. ERISA Preemption

ERISA preemption was intended "to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans." *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005). The relevant ERISA section, ERISA § 514(a), 29 U.S.C. § 1144(a), provides that the ERISA provisions "shall supersede any and all State laws insofar as they may now or hereafter ***relate to*** any employee benefit plan." (emphasis added).

State laws are said to relate to ERISA plans if they "(1) mandate employee benefit structures or their administration; (2) provide alternative enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice." *Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 419 (6th Cir. 2014) (citation omitted). A state-law cause of action is preempted insofar as it "duplicates, supplements, or supplants" the remedies available under ERISA. *Id*. Additionally, "if resolution of the state-law claim necessarily requires evaluation of the plan and the parties'

performance pursuant to it," the claim relates to the plan and is preempted. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 557 (6th Cir. 2012) (citation omitted) (internal quotation removed). In other words, if the defendant's legal duty arose solely from the plan, a claim for breach of that duty may only be brought under § 1132. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 860 (6th Cir. 2007); *Briscoe v. Fine*, 444 F.3d 478, 499-500 (6th Cir. 2006).

### 1. Consumer Fraud

Using the same operative facts that underlie the ERISA claim, Plaintiff alleges that Cigna and Zotec engaged in consumer fraud through deceptive business practices. (Docket Entry 1-1, p. 43-47). As a result of this alleged misconduct, Plaintiff states that he paid inflated health care premiums and underwent unnecessary testosterone treatment. (Docket Entry 1-1, p. 45-46).

This cause of action relates to the Plan and is therefore preempted. A state-law claim for consumer fraud may not be used as an alternative enforcement mechanism to ensure that a welfare benefit plan is properly administered. *See Briscoe*, 444 F.3d at 499 ("That the plaintiffs have captioned what is essentially a breach-of-fiduciary-duty claim as a suit for fraud, misrepresentation, and concealment does not alter the fact their state-law cause of action mirrors their federal claim under ERISA."). This claim is preempted.

### 2. Fraud in the Inducement

According to Plaintiff, Cigna wrongfully induced Plaintiff to enroll in its Plan through Cigna's "misrepresentation and omissions." (Docket Entry 1-1, p. 51). This deception allegedly resulted in Plaintiff paying an inflated premium which was more than Cigna's services were worth. (Docket Entry 1-1, p. 53). Plaintiff seeks injunctive relief, restitution, costs, and punitive damages. (Docket Entry 1-1, p. 53).

Very similar to Plaintiff's claim of consumer fraud, this claim also relates to the Plan and is preempted. Rather than seeking to rescind the welfare benefit plan, Plaintiff seeks to be restored to the position he would be in if Cigna had conducted itself according to its alleged pre-policy representations. Attacks on the way a plan is administered must be raised under ERISA, not as a claim of fraud in the inducement. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987) (holding that a claim for fraud in the inducement, among other claims, was preempted insofar as it was based on the way claims for benefits were processed).

### 3. Negligence

In Count IV, Plaintiff claims that Cigna and Zotec were negligent in their failure to investigate the possibility of false claims and ensure that medical coding was done correctly. (Docket Entry 1-1, p. 53). This failure allegedly increased Plaintiff's health care premium and enabled Plaintiff to receive testosterone treatments. (Docket Entry 1-1, p. 55).

This claim relates to the Plan, and accordingly, it is preempted. To determine whether Plaintiff suffered injury from negligent handling of fraud investigations and coding practices, this Court would necessarily need to evaluate the Plan and the Defendants' performance pursuant to it. *See Cataldo*, 676 F.3d at 557 (holding that state-law claims for fraud and negligence, among other claims, were preempted because a resolution of the claims would entail an evaluation of the plan). The claim is preempted.

### 4. Breach of Fiduciary Duty

Plaintiff's common law breach of fiduciary duty claim (Docket Entry 1-1, p. 55-56) is preempted, for it has long been held that "[c]ommon law breach of fiduciary duty claims are . . . preempted by ERISA." *Smith*, 170 F.3d at 613 (citation omitted).

### 5. Breach of Contract

Plaintiff alleges that Cigna failed to live up to the promises it made concerning the Plan. (Docket Entry 1-1, p. 58). This claim unmistakably relates to the Plan because adjudication of this claim would require the court to assess the Plan and Cigna's performance pursuant to it. *See Cataldo*, 676 F.3d at 557; *see also Goldman v. BCBSM Found.*, 841 F. Supp. 2d 1021, 1027 (E.D. Mich. 2012) (holding that a breach of contract claim "clearly falls within ERISA's preemptive force"). The claim is preempted.

### 6. Breach of Promises

It is not altogether clear whether Plaintiff intended the section entitled "Breach of Promises" to be included in his "Breach of Contract" claim. Nevertheless, the assertions contained within Plaintiff's "Breach of Promises" section are likewise preempted. This section repeats allegations from many of the aforementioned claims: failing to upgrade to ICD-10, failing to investigate fraud properly, and not honoring the terms of a contract, all of which resulted in an inflated premium price and receipt of unnecessary medical treatment. (Docket Entry 1-1, p. 58-61). This claim is also preempted. Any duties arising from these alleged promises are solely due to the existence of the Plan. *See Thurman*, 484 F.3d at 860.

## V. Recommendation

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that Defendants' Motion to Dismiss (Docket Entry 35) be **GRANTED**.

Under Fed. R. Civ. P. 72(b), the parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure

to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 2nd day of October, 2015

s/ John S. Bryant_____
John S. Bryant
U.S. Magistrate Judge
